UNITED STATES DISTRICT COURT

DISTRICT OF HAWAI'I

JACK BRENHA,

           Petitioner,

    vs.

UNITED STATES OF AMERICA,

           Respondent.

CR. NO. 22-00074-DKW-1
CV. NO. 25-00238-DKW-RT

**ORDER (1) DENYING MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE; AND (2) DENYING CERTIFICATE OF APPEALABILITY**

Relying on 28 U.S.C. Section 2255, Petitioner Jack Brenha moves for vacatur of his 210-month term of imprisonment and requests resentencing, claiming he received the ineffective of assistance of counsel prior to and during his sentencing.  Because Brenha is both mistaken and has failed to demonstrate prejudice resulting from counsel's allegedly deficient performance, his motion to vacate, Dkt. No. 78, is DENIED.

## BACKGROUND

On June 22, 2022, the United States Attorney initiated a Criminal Complaint against Brenha, Dkt. No. 1, with Attorney Jason Say appointed as Brenha's counsel six days later, Dkt. No. 7.  On March 23, 2023, a grand jury returned a Superseding Indictment, charging Brenha with: (1) conspiring to distribute and possessing with the intent to distribute 50 grams or more of methamphetamine and

1 kilogram or more of a mixture or substance containing a detectable amount of heroin (Count 1); (2) attempting to possess with the intent to distribute 50 grams or more of methamphetamine (Count 2); and (3) attempting to possess with the intent to distribute 1 kilogram or more of a mixture or substance containing a detectable amount of heroin (Count 3).  Dkt. No. 31.

On October 17, 2023, Brenha pled guilty to Count 1 of the Superseding Indictment pursuant to a plea agreement.  Dkt. No. 48.  In the plea agreement, Brenha agreed that his offense conduct included conspiring with others to distribute 50 grams or more of methamphetamine in Hawai'i.  Dkt. No. 49 at ¶ 8(b).  Among other things, Brenha agreed that a parcel containing methamphetamine and heroin was shipped to Hawai'i, he directed a co-conspirator to retrieve the parcel, and he intended to distribute the drugs in the parcel to others. *Id*. at ¶¶ 8(c), (f).  Brenha also agreed that he was subject to a sentence of not less than 10 years and not more than life and agreed to waive his right to appeal any sentence imposed within the guideline range determined by this Court.  *Id*. at ¶¶ 7, 13.  For its part, the government agreed to recommend a sentence of 12 years (or 144 months) imprisonment.  *Id*. at ¶ 4.  Brenha acknowledged, however, that irrespective of any agreement or stipulation between the parties, this Court was not bound by the same in reaching a sentence.  *Id*. at ¶¶ 4, 11.

At his change of plea hearing, Brenha agreed that he had read and understood his plea agreement in full, he had received enough time to discuss with Say whether to plead guilty in this case and, at that point, he was satisfied with Say's representation.  Tr. of Plea Hrg. at 4:19-25, 7:16-18, 7:22-24, Dkt. No. 72. Brenha further agreed that he had not been forced or coerced into pleading guilty and that, other than his written plea agreement, no promises or assurances had been made in order to get him to plead guilty.  *Id*. at 6:13-17, 8:11-21.  Brenha further agreed that he faced a minimum term of imprisonment of 10 years and a maximum term of life.  *Id*. at 6:23-7:12.  He agreed to waive his right to appeal the judgment in this case, except for claims involving the ineffective assistance of counsel or any sentence above the applicable guideline range.  *Id*. at 12:16-13:22.  Brenha further agreed and understood that the Court was not required to accept any stipulations between the parties in the plea agreement, and the Court could impose a sentence more severe than what he might expect up to the maximum permitted under the law.  *Id*. at 9:3-7, 19:4-14.  Brenha acknowledged that no one had made any promises to him about the length of his sentence.  *Id*. at 19:15-17.  Brenha further agreed that, between March and July 2019, he conspired with others to distribute methamphetamine and heroin, including by directing a co-conspirator to retrieve a parcel that was meant to contain those drugs for Brenha to distribute.  *Id*. at 21:20-24:6.

On March 5, 2024, the Court sentenced Brenha to a term of 210 months imprisonment on Count 1 of the Superseding Indictment. Dkt. Nos. 58, 60. The Court did so, in part, after adopting without change the unopposed presentence investigation report (PSR). Dkt. Nos. 51-52; Tr. of Sent. Hrg. at 2:21-3:17, Dkt. No. 74. The PSR held Brenha responsible for roughly 3,000 grams of heroin, 897 grams of actual methamphetamine, and roughly 1,360 grams of generic methamphetamine, resulting in a base offense level of 34. Dkt. No. 53 at ¶¶ 40-42. Brenha further received a two-level increase to his offense level as an organizer, leader, manager, or supervisor of the charged criminal activity because, *inter alia*, he directed a co-conspirator to retrieve parcels containing drugs and, upon receiving the parcels, he took custody of the same and provided the drugs to the co-conspirator for distribution. *Id*. at ¶ 45. After reductions in his offense level for acceptance of responsibility, the PSR assigned Brenha a total offense level of 33. *Id*. at ¶¶49-51. The PSR also assigned Brenha a criminal history category of V, based on a total of 11 points for such offenses as promoting a dangerous drug, criminal contempt, and being a felon-in-possession of a firearm. *Id*. at ¶¶ 70-72, 75, 77-78.[1] In addition, unscored, but still observed, in the PSR, was a criminal history going back to 1985 (when Brenha was age 22) and littered with numerous

---

[1]In 2021, the undersigned sentenced Brenha in a separate criminal proceeding to 27 months imprisonment on the firearms offense. Dkt. No. 53 at ¶ 77.

drug, vehicular, and contempt offenses. *Id.* at ¶¶ 55-69, 77. With a total offense level of 33 and a criminal history category of V, the PSR determined Brenha's guideline imprisonment range as between 210 and 262 months. *Id.* at ¶ 128.

On the day of sentencing, Brenha filed a memorandum requesting a mandatory minimum sentence of 10 years imprisonment. Dkt. No. 57. At the sentencing hearing, consistent with the plea agreement, the government recommended a sentence of 144 months imprisonment, suggesting that Brenha's age, which was 61 at the time of sentencing, and the fact that he had been incarcerated since 2020, were factors warranting a sentence substantially below the guideline range. Sent. Tr. at 6:6-24. Represented by Say, Brenha argued that a mandatory minimum sentence was warranted in light of sentences his co-conspirators had received in this case and his purported "full" acceptance of responsibility. *Id.* at 8:19-11:23. With respect to the latter, Say also represented that Brenha had not challenged the two-level increase he received for a "managerial role" in the conspiracy because Brenha did not "want to make any arguments to the Court that would show that he was disingenuous [with respect to accepting responsibility]." *Id.* at 9:5-11. Brenha took the opportunity to allocute, stating that he hoped any sentence "doesn't outlive me[]", he was ready to accept responsibility for his actions, and he wished to utilize "programs" offered during his incarceration. *Id.* at 11:24-12:19.

In reaching a sentence, the Court discussed aggravating and mitigating factors under 18 U.S.C. Section 3553(a). *See generally id*. at 13:3-20:20. In doing so, the Court highlighted the impact of methamphetamine and heroin on the local community, Brenha's almost 40-year-long criminal history, the increasing severity of Brenha's crimes which culminated in the charged offenses, Brenha's substance abuse addictions, the lack of a support network following any release from prison, and, overall, the indication that Brenha would "recidivate practically the minute" he was released. *Id*. at 15:15-18:23, 20:14-20. In mitigation, the Court observed Brenha's age, employment history, and labor skills. *Id*. at 18:24-19:12. Upon review of the foregoing, the Court concluded that no downward variance, let alone ones as significant as those recommended by the parties, was warranted. *Id*. at 19:13-20:20. Instead, the Court found that "the best" sentence Brenha could receive was a low-end guideline sentence of 210 months imprisonment. *Id*. at 20:21-24. After imposing that sentence, the Court informed Brenha of his right to appeal in a manner consistent with his plea agreement and within 14 days of entry of judgment. *Id*. at 23:13-19.

Judgment entered on March 6, 2024. Dkt. No. 60. Five days later, on March 11, 2024, Brenha filed a pro se notice of appeal and request for substitution of counsel. Dkt. No. 62. On March 15, 2024, the Ninth Circuit Court of Appeals granted the request for substitution of counsel, with this Court appointing new

counsel the same day.  Dkt. Nos. 66-67.  On June 5, 2024, before the Ninth Circuit, Brenha moved to voluntarily dismiss his appeal.  *United States v. Brenha*, Case No. 24-1445, Dkt. No. 9-1.  In doing so, Brenha's appellate counsel, DeAnna Dotson, stated that the record did not contain a "way to overcome" the appellate waiver clause in Brenha's plea agreement.  *Id.* at 4.  Attached to the motion to dismiss was a signed letter from Brenha, stating that he did not "see any reason to continue with [the appeal] so I would like to dismiss the appeal and proceed no further."  *United States v. Brenha*, Case No. 24-1445, Dkt. No. 9-2.  On June 10, 2024, the Ninth Circuit granted the motion to dismiss, thereby dismissing the appeal.  Dkt. No. 77.

Almost a year later, on June 5, 2025, Brenha filed the instant pro se motion to vacate his sentence pursuant to 28 U.S.C. Section 2255 (Section 2255 Motion). Dkt. No. 78.  Liberally construed, Brenha asserts that Say rendered ineffective assistance of counsel in the following respects: (1) Say "refus[ed]" to provide requested discovery; (2) Brenha "never saw" the PSR until "the day before sentencing"; (3) Say provided Brenha only a "cursory review" of the plea agreement; (4) Say had "no intention of objecting to the sentence" Brenha received; and (5) Say "never said anything" to Brenha about the "option or possibility of appealing [his] sentence until 3 days after sentencing."  Brenha further asserts that Say's representation prejudiced him because, if the Court had

sustained an objection to "improper relevant conduct", "a revised sentencing range would have provided for a sentence of significantly less time." *Id*. at 12.

On July 7, 2025, the government filed an opposition to the Section 2255 Motion. Dkt. No. 82. In a nutshell, the government argues that Brenha has failed to make the required showing of ineffective assistance of counsel with respect to any aspect of Say's alleged representation. On October 6, 2025, Brenha filed a reply. Dkt. No. 85. Therein, Brenha reiterates that Say failed to review the PSR with him until a day before sentencing, failed to disclose discovery, and "coerc[ed]" him into signing the plea agreement. With briefing complete, this Order now follows.

## STANDARD OF REVIEW

Under Section 2255 of Title 28 of the United States Code (Section 2255), "[a] prisoner in custody under sentence of a court established by Act of Congress…may move the court which imposed the sentence to vacate, set aside, or correct the sentence." 28 U.S.C. § 2255(a). The statute authorizes the sentencing court to grant relief if it concludes "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]" *Id*.

Here, Brenha contends that his sentence should be vacated because he received the ineffective assistance of counsel.  To prevail on an ineffective assistance of counsel claim, a petitioner must establish two distinct elements.  First, he must show that counsel's representation fell below an objective standard of reasonableness.  *Strickland v. Washington,* 466 U.S. 668, 688 (1984).  Second, he must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  In other words, a petitioner must show *both* that counsel's performance was deficient *and* that the deficiency was prejudicial.  *Id.* at 692.

With respect to prejudice, when challenging a guilty plea, a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).  As for appealing a criminal judgment, a petitioner must show that counsel's performance deprived him of an appeal that he otherwise would have taken.  *Roe v. Flores-Ortega*, 528 U.S. 470, 484 (2000).

Conclusory allegations made with no factual or legal explanation fall well short of stating a cognizable claim for ineffective assistance of counsel.  *See Blackledge v. Allison,* 431 U.S. 63, 74 (1977) ("[P]resentation of conclusory allegations unsupported by specifics is subject to summary dismissal.").

## DISCUSSION

As discussed, Brenha moves for vacatur of his sentence on numerous grounds of ineffective assistance of counsel. At the very least, however, the record clearly reflects that Brenha has failed to show any prejudice arising from his counsel's alleged misrepresentation and, therefore, each of his claims is rejected.

## 1.    Discovery

Brenha argues that, despite requesting discovery from Say, he was not provided with the same and this "negatively impacted the subsequent drug related conviction." Dkt. No. 78 at 3. Brenha fails to explain, however, how any discovery that he allegedly did not receive "negatively impacted" this proceeding. In fact, Brenha barely even identifies the missing discovery, which he claims to have at one-time reviewed, beyond stating that it included "images" from a co-conspirator's residence. Dkt. No. 78 at 2. Brenha then, without explanation, contends that this discovery would have "mitigated" his role in the instant drug offenses. *Id*. at 3. Given that Brenha does not explain why, this contention deserves little further discussion. Nonetheless, the Court observes that the PSR disclosed that a co-conspirator's residence was used to facilitate the drug transactions at issue in this case. Dkt. No. 53 at ¶ 45. This simple fact, however, has little bearing relative to the more salient point that *Brenha* distributed drugs from the same residence, and *Brenha* directed a different co-conspirator to bring

drugs to the residence—facts that Brenha still does not dispute in the Section 2255 Motion.  As a result, because Brenha has failed to even explain, let alone show, that any allegedly undisclosed discovery would have changed this proceeding, he has failed to show any *Strickland* prejudice with respect to this claim.[2]

## 2.  **Guilty Plea**

Brenha argues that Say failed to "explain the content or meaning of the content" in the plea agreement and made Brenha "feel that I had no choice but to sign it."  Dkt. No. 78 at 7.  Brenha further asserts that, prior to accepting the plea agreement, Say failed to "delve into the actions of the other people involved" in the conspiracy, which, according to Brenha, resulted "in a sentence that is ill proportioned to my degree of involvement."  *Id.*

The Court finds these arguments without merit.  Specifically, they are clearly contradicted by Brenha's statements during the plea hearing, none of which

---

[2]Brenha also contends that Say's failure to disclose requested discovery led him to not challenge "violations in the gun-related legal process", by which he appears to mean the separate firearm offense mentioned earlier in which he received a 27-month sentence.  *See* Dkt. No. 78 at 3.  As with the instant drug offenses, however, Brenha fails to even identify the purported "violations in the gun-related process".  Therefore, the Court does not further address this matter herein.  In addition, in his reply, Brenha appears to contend that, if he had received the allegedly requested discovery, it may have helped him better consider a purported "10 year offer on the combined [firearm] indictment and [the instant] drug indictment…."  Dkt. No. 85 at 2.  Putting aside that Brenha offers no support for the idea that he was offered a 10-year sentence for both the firearm and drug offenses, he fails to explain how any allegedly missing discovery would have led him to accept such an offer or even that he would have accepted the same at all.  *See id.* at 2-3; *Missouri v. Frye*, 566 U.S. 134, 147 (2012) (explaining that, to show prejudice in this context, a petitioner "must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel.").

he even mentions, let alone challenges.  Similarly, beyond simply stating that his role was "ill proportioned", Brenha does not challenge any of the facts to which he agreed.  In this regard, the Ninth Circuit has explained that a "[p]etitioner's statements at the plea colloquy carry a strong presumption of truth[]" and, thus, a claim relying on allegations that "directly contradict" those statements, ordinarily, "must fail."  *Muth v. Fondren*, 676 F.3d 815, 821 (9th Cir. 2012) (citing cases for the proposition that a petitioner must have "a compelling explanation for the contradiction.").

Here, at the plea hearing, Brenha agreed, among other things, that he had read and understood the plea agreement in full, he had received enough time to discuss with Say whether to plead guilty in this case, he was satisfied with Say's representation, he had not been forced or coerced into pleading guilty, no promises or assurances had been made in order to get him to plead guilty, he faced a minimum term of imprisonment of 10 years and a maximum term of life, the Court could impose a sentence more severe than what he might expect up to the maximum permitted under the law, no one had made any promises to him about the length of his sentence, and he directed a co-conspirator to retrieve a parcel that was meant to contain drugs for Brenha to distribute.  These admissions directly contradict <u>all</u> of Brenha's new allegations regarding the plea agreement, the plea process, and/or Say's representation during the same.  They also contradict

12

Brenha's suggestion that -- in some unexplained fashion -- his role in the offense was "ill proportioned" or otherwise did not warrant the two-level upward adjustment he received at sentencing.  Moreover, in the face of this contradiction, Brenha offers no explanation for the same, let alone anything compelling.  In fact, Brenha instead conveniently ignores all of the representations he made both in the plea agreement and at the plea hearing.[3]  Therefore, the Court rejects this claim as a basis to vacate Brenha's sentence.  *See Muth*, 676 F.3d 821.

### 3.    <u>PSR and Sentencing</u>

Brenha argues that Say did not provide him with an opportunity to review the PSR until "the day before sentencing[]" and, despite identifying "numerous errors that needed to be corrected[]", Say "simply took the position that it was too late to make any changes."  Dkt. No. 78 at 3.  In addition, Brenha further argues that, at sentencing, Say failed to "object to the use of relevant conduct."  *Id*. at 8.  Brenha also argues that Say failed to file documents Brenha had provided in support of his sentencing request, such as "IRS documents showing [his] full-time

---

[3]In his reply, Brenha adds that Say allegedly "was adament [*sic*] that I would receive the negotiated and recommended 144 month sentence…."  Dkt. No. 85 at 3.  Even if remotely accurate, this Court and the plea agreement itself expressly advised Brenha that the Court was not bound by the 144-month recommendation and that Brenha could be sentenced up to the maximum authorized by law, *i.e.*, life imprisonment.  Therefore, at best, Brenha suffered no prejudice in this regard.  *See Torrey v. Estelle*, 842 F.2d 234, 235 (9th Cir. 1988) (explaining that, before accepting a guilty plea, a court must advise a defendant of the "range of allowable punishment" resulting from the plea) (quotation omitted).

employment status", "four reference letters", "course/class completion certificates", and "a letter [he] had prepared for the judge." *Id*. at 4.

Once again, even if accurate, Brenha has failed to identify any prejudice in this regard. Notably, like with his claim concerning discovery, other than loosely alleging "errors" with respect to broad topics such as "relevant conduct" and his "aggravating role", Brenha does not identify or further describe any of these purported errors. For example, with respect to his "role" in the offense, Brenha does not even mention, let alone identify an error in, the PSR's finding that he directed the conduct of others and distributed drugs.[4] Brenha, therefore, provides no reason for Say to have "corrected" the PSR or otherwise objected at sentencing in this regard. With respect to the documents Say allegedly failed to file, the PSR documented Brenha's employment history in the years prior to his arrest and his educational achievements. Dkt. No. 53 at ¶¶ 118-125. Further, even if Brenha allegedly wrote a letter to the Court, he had (and took) the opportunity to allocute at sentencing where the contents of any such letter could have been expressed. As for purported "reference letters", Brenha does not identify, provide, or express the content of the same beyond their alleged title. Similarly, he fails to explain how the "reference letters", or his own letter, would have changed the sentencing

---

[4]As for "relevant conduct", the only such conduct in the PSR concerned uncharged drug amounts found in Brenha's residence. Dkt. No. 53 at ¶¶ 35-36. Brenha, however, does not explain or mention how these findings were erroneous.

calculus here, particularly in light of Brenha's lengthy and increasingly severe criminal history.

As a result, because Brenha has failed to show that the sentencing result would have been different, his claims concerning Say's representation with respect to the PSR and at sentencing are without merit.

## 4. <u>Appeal</u>

Despite the clear record that he filed a notice of appeal, prosecuted the appeal, and then dismissed the appeal upon the advice of substitute appellate counsel, Brenha argues that Say "never said anything to me about the option or possibility of appealing my sentence until 3 days after sentencing". Dkt. No. 78 at 5. Even if true, that contention cannot possibly constitute the ineffective assistance of counsel for one very obvious reason. Specifically, Brenha timely FILED a notice of appeal. Moreover, even in Brenha's factual scenario, Say *did* consult with him about appealing his sentence. The fact that it occurred just three days after sentencing is irrelevant. *See* Fed.R.Crim.P. 4(b)(1)(A) (in pertinent part, providing that, in a criminal case, a notice of appeal, must be filed "within *14 days*" after entry of judgment) (emphasis added). To the extent anything more is needed to address this claim, the Court observes that Brenha was advised on numerous occasions, including at his sentencing by the undersigned, of his right to

appeal within the parameters of his plea agreement.  Therefore, at the very least, Brenha has clearly suffered no prejudice in this regard.

## 5.    **Evidentiary Hearing**

In the Section 2255 Motion, Brenha does not appear to request an evidentiary hearing.  Nonetheless, pursuant to Section 2255(b), a court shall grant a prompt hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief…."  28 U.S.C. § 2255(b).

As the Court has detailed herein, the record conclusively shows that Brenha is not entitled to the relief he seeks in the Section 2255 Motion.  The Court, thus, finds that an evidentiary hearing is not warranted.

## 6.    **Certificate of Appealability**

In denying the Section 2255 Motion, the Court must also address whether to issue a Certificate of Appealability ("COA").  *See* R. 11(a), Rules Governing Section 2255 Proceedings.  A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This standard is met only when the applicant shows that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Slack v. McDaniel,* 529 U.S. 473, 483–84

(2000) (internal quotation marks omitted).  In light of the findings herein, the Court concludes that reasonable jurists would not debate the resolution of the Section 2255 Motion.  Accordingly, the Court DENIES the issuance of a COA.

## CONCLUSION

For the foregoing reasons, the Court DENIES the Section 2255 Motion, Dkt. No. 78, DENIES an evidentiary hearing, and DENIES a COA.

The Clerk is directed to enter Judgment in favor of the United States of America and then close Case No. 25-cv-238-DKW-RT.

IT IS SO ORDERED.

Dated:  October 21, 2025 at Honolulu, Hawaiʻi.



Derrick K. Watson
Chief United States District Judge

---

*Brenha v. United States*; CR. NO. 22-00074-DKW-1, CV. NO. 25-00238 DKW-RT; **ORDER DENYING MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE**